Saina S. Shamilov (CSB No. 215636)
sshamilov@fenwick.com
FENWICK & WEST LLP
Silicon Valley Office
801 California Street
Mountain View, CA 94041
Tel: 650.988.8500
Fax: 650.938.5200

Bryan A. Kohm (CSB No. 233276)
bkohm@fenwick.com
Shannon E. Turner (CSB No. 310121)
sturner@fenwick.com
Su Li (CSB No. 339374)
sli@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: 415.875.2300
Fax: 415.281.1350
*See signature page for additional attorneys.*

Ryan Tyz (CSB No. 234895)
ryan@tyzlaw.com
Ciara McHale (CSB No. 293308)
ciara@tyzlaw.com
Stephanie Alvarez Salgado (CSB No. 334886)
stephanie@tyzlaw.com
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Defendants
Lashify, Inc. and Sahara Lotti

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Urban Dollz, LLC d/b/a Urban Doll,, <br><br> Plaintiff, <br><br> v. <br><br> Lashify, Inc. and Sahara Lotti, <br><br> Defendants. | Case No: 2:23-cv-01427-GW-AFM <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> Date:         February 15, 2024 <br> Time:         8:30 a.m. <br> Courtroom:  9D <br> Judge:        Hon. George H. Wu |

# TABLE OF CONTENTS

Page

I.     URBAN DOLL HAS NOT PLEADED AND CANNOT PLEAD ITS
       FALSE PATENT MARKING CLAIM WITH THE REQUIRED
       SPECIFICITY ........................................................................................1

II.    URBAN DOLL HAS NOT PLEADED AND CANNOT PLEAD ITS
       FALSE ADVERTISING CLAIM ............................................................6

       A.     Urban Doll's Claim Based on Statements That Lashify is the
              "First," "Only," "Last," "Revolutionary," or Similar Statements
              is Precluded under *Dastar* and its Progeny ..........................................6

       B.     Urban Doll Fails to Establish Any Alleged Statements are False
              or Are Not Non-Actionable Opinion and Puffery ...............................9

III.   URBAN DOLL FAILS TO STATE A CLAIM AGAINST MS.
       LOTTI ...................................................................................................10

IV.    CONCLUSION .....................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Appliance Recycling Centers of Am., Inc. v. JACO Env't, Inc.*
  378 Fed. Appx. 652 (9th Cir. 2010) ............................................................10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
  539 U.S. 23, 37, 123 S. Ct. 2041, 2050, 156 L. Ed. 2d 18 (2003) ...........7, 8

*Introsan Dental Products v. Dentsply Tulsa Dental LLC*
  Civ. No. 09–3111, 2012 WL 3011830 (D.Md. July 20, 2012) ....................3

*Ira Green, Inc. Inc. v. J.L. Darling, Corp.*
  No. 3:11-CV-05796-RJB, 2012 WL 4793005 (W.D. Wash. Oct. 9,
  2012) ............................................................................................................3

*McCabe v. Guitars*
  No. 10CV581 JLS (JMA), 2013 WL 12064539 (S.D. Cal. Mar. 4,
  2013) ............................................................................................................2

*OptoLum, Inc. v. Cree, Inc.*
  244 F. Supp. 3d 1005 (D. Ariz. 2017) ........................................................10

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*
  2021 WL 2188219 (D. Del. 2021)..........................................................10, 11

*R & A Synergy LLC v. Spanx, Inc.*
  No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1,
  2019) ............................................................................................................8

*Server Tech., Inc. v. American Power Conversion Corp.*
  2013 WL 4506135 (D. Nev. 2013)................................................................3

*Taleshpour v. Apple Inc.*
  No. 5:20-CV-03122-EJD, 2021 WL 1197494 (N.D. Cal. Mar. 30,
  2021) ............................................................................................................9

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*
  648 F. App'x 609 (9th Cir. 2016)..................................................................2

*TrafficSchool.com, Inc. v. Edriver Inc.*
  653 F.3d 820 (9th Cir. 2011) ........................................................................2

*U.S. Rubber Recycling, Inc. v. ECORE Int'l, Inc.*
  503 F. App'x 951 (Fed. Cir. 2013)................................................................3

*U.S. Rubber Recycling, Inc. v. Ecore Int'l,*
  No. CV0909516SJOOPX, 2011 WL 13130696 (C.D. Cal. Dec. 12,
  2011) ............................................................................................................3

*Zobmondo Ent. LLC v. Imagination Int'l Corp.*
  2009 WL 8714439 (C.D. Cal. 2009) ........................................................7, 9

**STATUTES**

15 U.S.C. § 1125 .................................................................................6

35 U.S.C. § 292 ...................................................................................6

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................1, 11

1   Urban Doll's Opposition does not save its defective claims in the First
2   Amended Complaint. The Court should grant Lashify's Motion and dismiss the
3   claims with prejudice.

## I.   URBAN DOLL HAS NOT PLEADED AND CANNOT PLEAD ITS FALSE PATENT MARKING CLAIM WITH THE REQUIRED SPECIFICITY

6   Urban Doll's opposition does nothing to change its continued failure to
7   establish a competitive injury to sustain its false marking claim. As this Court held,
8   Urban Doll must "plead factual evidence relating to particular instances of
9   competitive injury, or otherwise plead a causal connection between the alleged
10  instance of competitive injury, such as a lost sale, and the defendant's false
11  marking" and must do so consistent with Rule 9(b)'s heightened pleading standard.
12  Dkt. 41 ("Order") at 7. Urban Doll has not done so, and the thin arguments it offers
13  claiming otherwise each fail.

14  Urban Doll's primary argument appears to be that its role as a direct
15  competitor of Lashify means that a competitive injury can be "generally presumed."
16  Dkt. 48 ("Opp.") at 4–7. This is wrong. As an initial matter, Urban Doll's claim
17  that the parties are direct competitors cannot support any claim of competitive
18  injury resulting from the alleged marking statements because at the time of those
19  statements, Urban Doll did not exist, let alone compete with Lashify. All but one
20  of the statements that Urban Doll contends gives rise to its false patent marking
21  claim *predate* Urban Doll's entry into the market in January 2022. Dkt. 42 ("FAC")
22  ¶¶ 64–87, 99; *see also Lashify v. Urban Doll* Dkt. 201 ("CC") ¶¶ 64–87, 99. And,
23  except for one statement, Urban Doll has conceded that the allegedly false
24  statements regarding patent status were true (*i.e.*, Lashify obtained patents on the
25  products) by or before the time Urban Doll launched, or at the very latest, within
26  months of Urban Doll's entry into the market. FAC/CC ¶¶ 65, 68, 70, 75. Urban
27  Doll was not in the business of DIY lash extensions—and in fact was not a business
28  at all—during the time it alleges that Lashify made false patent markings.

Accordingly, Urban Doll could not have suffered competitive injury from statements that were true, by its own admission, at any time the parties could have been considered "direct competitors."

Nor can Urban Doll rely on the notion that a competitive injury can be "generally presumed when the parties are direct competitors and defendant's misrepresentation has a tendency to mislead consumers."  Opp. at 6 (citing *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016) and *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011)).  The parties' "direct competition" cannot "provide[] a causal link" for any alleged injury (Opp. at 6) because, as explained above, the parties were never competitors at the time the alleged statements were made.  Moreover, the cases Urban Doll cites for this argument all concern the competitive injury component of *Lanham Act* claims and are thus inapplicable.  There is no such presumption of competitive injury in the context of a false marking claim.

In *McCabe v. Guitars*, No. 10CV581 JLS (JMA), 2013 WL 12064539, at *5 (S.D. Cal. Mar. 4, 2013), the court considered precisely this issue in granting a motion to dismiss a false marking claim with prejudice.  The court in *McCabe* explained in detail that the plain language of Section 292(c), and not cases interpreting the Lanham Act, "must control" determination of competitive injury in a false marking case and requires actual injury caused by the false statements.  The court first noted that the Lanham Act, "unlike § 292(c), 'permits 'any person' to sue if he 'believes he is *likely* to be damaged.'"  *Id.* (emphasis in original) (quoting *TrafficSchool.com*, 653 F.3d at 826, which in turn quotes 15 U.S.C. § 1125(a)).  The court then explained that "[b]ecause likely injury is enough to confer standing, courts are willing to presume injury" in Lanham Act false advertising cases "where the plaintiff and defendants are direct competitors and defendants' misrepresentations have a tendency to mislead consumers."  *Id.*  For false marking claims, on the other hand, the court reasoned that "Section 292(c)'s plain language

suggests . . . that a likely, or potential, injury is inadequate to establish standing to bring a false marking claim." *Id.* Rather:

> Section 292(c) calls for a plaintiff to show that "he *has suffered* competitive injury as a result of" the defendant's false marking . . . A plaintiff's belief that he could suffer, or could have already suffered, an injury is irrelevant.

*Id.* (emphasis in original) (quoting 35 U.S.C. § 292(c)). Thus, to sustain a false marking claim, "[a]ctual harm to the plaintiff's ability to compete is required," and "§292(c) requires that the defendant's false marking claim be the cause of plaintiff's competitive injury." *Id.*; *see also U.S. Rubber Recycling, Inc. v. Ecore Int'l*, No. CV0909516SJOOPX, 2011 WL 13130696, at *4 (C.D. Cal. Dec. 12, 2011), *aff'd sub nom. U.S. Rubber Recycling, Inc. v. ECORE Int'l, Inc.*, 503 F. App'x 951 (Fed. Cir. 2013) (holding that causation is a "critical question" and that it is plaintiff's (or counterclaimant's) "burden to come forward with evidence that Defendant's false marking was actually the cause of its lost sales"); *Introsan Dental Products v. Dentsply Tulsa Dental LLC*, Civ. No. 09–3111, 2012 WL 3011830, at *5 (D.Md. July 20, 2012) (granting motion to dismiss false marking claim and holding that "even when the § 292 claimant and defendant are competitors, that fact alone does not create a plausible claim of competitive injury"); *Ira Green, Inc. Inc. v. J.L. Darling, Corp.*, No. 3:11-CV-05796-RJB, 2012 WL 4793005, at *10 (W.D. Wash. Oct. 9, 2012) (requiring causation and proof of actual injury to sustain false marking claim and dismissing claim on summary judgment where plaintiff presented "no facts showing loss of sales, goodwill or ability to market that was caused by" alleged false marking); *Server Tech., Inc. v. American Power Conversion Corp.*, 2013 WL 4506135, *2-*3 (D. Nev. 2013) (dismissing false marking claim where plaintiff did not prove "any sales actually lost" caused by false marking).

Urban Doll has not shown and cannot show any such actual injury caused by any alleged statement by Lashify or Ms. Lotti. Stripping away its invocation of a presumption of injury that does not apply, Urban Doll's allegations of competitive

injury rest entirely on online comments Urban Doll claims were left by "potential customers" that "each . . . represents an injury" to Urban Doll "as a result of Defendants' false marking." Opp. at 5. This assertion mischaracterizes the proffered comments, none of which show any actual competitive injury (such as a lost sale), let alone an injury caused by any of Lashify's alleged years-old marking statements.

As a case in point, Urban Doll appears to center as its best example of competitive injury a comment by "a potential customer named Brittany Witt" who "commented that the Urban Doll products must be 'low quality knock off of lashify'" because "their system is patented," citing this comment as a "specific instance of competitive injury suffered by" Urban Doll. Opp. at 5 (quoting comment). Later in the opposition, Urban Doll claims that "potential customers, for example Brittany Witt, very clearly chose Lashify over Urban Doll because Lashify's 'system is patented' and that Urban Doll is allegedly 'stealing [Lashify's] patented intellectual property.'" Opp. at 7. But these characterizations of Ms. Witt's and others' comments are wrong on multiple levels. First, Ms. Witt's comments show only that Urban Doll is a knockoff of Lashify, whose system is patented. There is no indication on the face of Ms. Witt's comment that she is a "potential customer" of Urban Doll. She does not state, for example, that she had ever considered purchasing Urban Doll products. She does not suggest that she had planned to purchase Urban Doll products until seeing Lashify's products or learning they were patented, which changed her mind. Nor is there any basis to conclude that her description of Lashify's system as patented results from marking statements that predate her comment by years. *See* FAC/CC ¶ 105 (comment left in 2022). Indeed, as Urban Doll concedes, even the alleged marking statements at issue in this case were *true* by the time Urban Doll entered the market in 2022—the same time of Ms. Witt's comment. *Compare* FAC/CC ¶¶ 65, 68, 70, 75 (admitting issuance of Lashify patents directed to various components of the Lashify system

in 2018–2021) *with* FAC/CC ¶ 105 (comment posted in 2022).  The only logical inference from Ms. Witt's comment, and others like it, is that the posters refer to Lashify's system as patented simply because it is true: *Lashify's system is patented*.

All of the other user comments in the FAC are similar to Ms. Witt's comment and likewise show no competitive injury.  While the posters refer to Urban Doll as a knockoff of Lashify's patented system, there is not a single comment that suggests any such poster was *ever* a potential customer of Urban Doll, or that they learned of Lashify's patents from years-old alleged statements.  *See generally* FAC ¶ 105. Further, Urban Doll cannot even claim that the presence of these comments caused other potential customers not to purchase Urban Doll products, when the proffered screenshots show the opposite.  There are no comments that suggest, for example, that any potential customer saw posts about Urban Doll being a knockoff and decided not to purchase its products.  Instead, multiple surrounding comments *confirm purchases and sales* of Urban Doll products—the opposite of an injury. *See id.* at p. 31 of FAC (showing comments stating, "Update from when I first tried them! They do work!" and "I just ordered some!").

Finally, Urban Doll has pleaded no facts to support its conclusory statement that it was "deterred from entering the market" as a result of Lashify's or Ms. Lotti's alleged marking statements.  Nothing in Urban Doll's opposition overcomes or changes the conclusory nature of this allegation.  Urban Doll has not suggested, for example, that Urban Doll intended to enter the market years earlier but was "deterred" from doing so by Lashify's reputation, let alone by any alleged marking statement by Lashify or Ms. Lotti.  Instead, Urban Doll tries to argue that its "intent to enter the market is certainly shown here by its actual entrance into the market." Opp. at 8.  But, critically, it is Urban Doll's "actual entrance into the market" that also *plainly shows it was not deterred from that entry*.  The FAC on its face suggests that (1) Urban Doll intended to enter the market and (2) Urban Doll therefore entered the market.  Urban Doll cannot escape these facts with a conclusory,

unsupported suggestion that it had wanted to enter the market at some vague, unidentified time "before" it did so.  There are thus no facts in the FAC that plausibly state a competitive injury based on deterrence from market entry.

In sum, as this Court observed in dismissing the original complaint, Urban Doll "cannot adequately plead a 'competitive injury' by merely asserting lost sales without alleging specific facts to support the contention that [Lashify's] false statement led to lost sales."  Order at 7.  Urban Doll has consistently tried to sustain its false marking claim on precisely such insufficient allegations, and the Counterclaim is no different.  The Court should dismiss the claim with prejudice.

## II.   URBAN DOLL HAS NOT PLEADED AND CANNOT PLEAD ITS FALSE ADVERTISING CLAIM

### A.   Urban Doll's Claim Based on Statements That Lashify is the "First," "Only," "Last," "Revolutionary," or Similar Statements is Precluded under *Dastar* and its Progeny

There is no dispute Court has already precluded Urban Doll from asserting a false advertising claim based on statements regarding Lashify's invention and/or patenting of the Lashify system—the heart of Urban Doll's allegations in the original complaint, which remain in the FAC.  Order at 15.  And the Court noted that "mere opinion as to the innovative or novel techniques of a product can be seen as mere puffery which is not actionable."  *Id.* at 14.  The Court gave Urban Doll leave to amend its claim only to the extent it could state a claim centered on any misrepresentation about the actual characteristics of Lashify's goods.  *Id.* at 15.

Stuck with these rulings, Urban Doll has gone to great lengths in the FAC (and the identical Counterclaim allegations in *Lashify v. Urban Doll*) to get around the Court's Order.   Urban Doll tries to recast statements about Lashify's inventorship, innovation, and origins of ideas, to instead suggest Lashify's statements concern who was the first to manufacture the product.  *See* Opp. at 9–10 ("the FAC sufficiently alleges that 'Defendants' claim that they are 'the first' or 'the last' or that they 'made DIY Lash Extensions possible' are all false and

misleading because they were not the first or the last to manufacture DIY lashes, and they did not make DIY lash extensions possible'" (quoting FAC/CC ¶ 119)). Urban Doll's twisting of its allegations and case law to support its arguments fails.

The alleged statements referring to Lashify as "the first," "the last," "the only," or a "revolutionary" system all center on the origin of *idea* and *invention* of the Lashify system, not any actual characteristics of the Lashify products, as the Court required. Nowhere in the FAC does Urban Doll point to a statement that Lashify touts itself as the first to *make* the first DIY lash extension product or the first to *sell* that product as a good. Rather, the statements concern, as the FAC states, the fact that Lashify *invented* "the first DIY lash extension." *See, e.g.*, FAC/CC ¶¶ 18 (referencing a "claim to have *invented* such things as 'the first DIY lash extension' and 'Underlash Technology'"). Nor does Urban Doll allege that Lashify's statements are false because the product was already being manufactured by someone else first, like the board game in the case on which Urban Doll misplaces its reliance. *Zobmondo Ent. LLC v. Imagination Int'l Corp.*, 2009 WL 8714439, at *4-5 (C.D. Cal. 2009). Instead, Urban Doll alleges falsity of Lashify's claims to be the first based on identification of various components of Lashify's system that allegedly existed in separate products and places before Lashify launched—*i.e.*, an attempt (albeit a failed one) to assert *prior art* that anticipates Lashify's *inventions*. *See, E.g.,* FAC/CC ¶¶ 26–43. At their core, Urban Doll's allegations thus do not concern any actual qualities of Lashify's tangible goods, but "the authorship" of the "idea[s], concept[s], or communication[s] embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S. Ct. 2041, 2050, 156 L. Ed. 2d 18 (2003).

Urban Doll's reliance on *Zobmondo* is misplaced. First, in *Zobmondo*, the court concluded in finding *Dastar* inapplicable that the complaint there "concern[ed] priority of manufacture, not creative genesis." *Zobmondo*, 2009 WL 8714439, at *1, *3 (noting even defendant's characterization of plaintiff's claim as

relating to their being "the first people ever **to make** a board game" (emphasis in original)).  Here, by contrast, the crux of Urban Doll's allegations from the start has been Lashify's claims of inventorship, innovation, and patenting of its products— *i.e.*, their creative genesis.

Moreover, other courts in this Circuit have found claims like those here precluded under *Dastar*.  For example, in *Williams & Lake LLC v. Genesis Sys. LLC*, the court dismissed with prejudice a Lanham Act claim regarding defendants' claim of authorship or inventorship of a vehicle braking system as precluded under *Dastar*.  No. CV-17-00117-TUC-CKJ, 2017 WL 6418937 (D. Ariz. Sept. 13, 2017).  The court then soundly rejected plaintiff's attempt to "distinguish the innovator of the product from the innovativeness of the product" to attempt to state "a cause of action if the [p]laintiff is asserting its product is innovative and something not found elsewhere."  *Id.* at *8.  The court concluded that allegations that a product is the first of its kind and that others following it were duplicitous or subpar "cannot overcome the fact that inventorship is not actionable under the Lanham Act, nor does it transmute the assertion from that of inventorship into an assertion of the product."  *Id.*  The court also disagreed with the notion that "somehow the statements about inventorship and superiority in combination convert them from statements about origin to that of the nature, characteristic, and quality of a product."  *Id.* at *9.  Rather, "statements about who invented a product go to origin" and "statements about product superiority or innovation are mere puffery."  *Id.*  Other courts, including in this district, have cited with approval the reasoning in *Williams*.  *See, e.g., R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *11 (C.D. Cal. May 1, 2019) (citing *Williams*' reasoning about preclusion of inventorship claims under *Sybersound* and dismissing Lanham Act claim based on statements that product was "new," "invented," and "fill[ed] a white space" in the market" because the statements were puffery and non-actionable); *Vericool World LLC v. Igloo Prod. Corp.*, No. 22-CV-02440-HSG,

2023 WL 8634803, at *5 (N.D. Cal. Dec. 13, 2023) (finding *Zobmondo*'s reasoning unpersuasive and observing, "even if the Court were to find that 'original' could refer to the time of manufacturing, the court in *Zobmondo* did not explain why such timing is a quality or characteristic of the [product] itself . . . [and] in the Court's view it does not alter the nature of the product or a user's experience with it").

Here, like in *Dastar* and the above cases, no physical or functional attributes of Lashify's products are implied by the statements Urban Doll alleges. Rather, they concern the fact that Lashify "created something new"—that it's the first, last, or only of its kind—and are thus squarely precluded under *Dastar*, *Sybersound*, and *Baden Sports*.

## B. Urban Doll Fails to Establish Any Alleged Statements are False or Are Not Non-Actionable Opinion and Puffery

Even if Lashify's alleged statements could be construed as concerning actual characteristics of its goods—and they cannot—Urban Doll has not shown that these or *any other* statements in the FAC are false or are anything other than non-actionable opinion and puffery.

***First***, Urban Doll cannot establish that Lashify's alleged statements about being "first" (and similar alleged statements) are false or are not opinion and/or puffery. Urban Doll has made no attempt, for example, to point to a preexisting product akin to the Lashify product to show the falsity of Lashify's claim to be first. The FAC instead cherry-picks various discrete components from a variety of sources that, together, still do not add up. Further, Urban Doll does not address this Court's Order or the many cases cited by Lashify showing that statements regarding a product's novelty, innovation, genius, groundbreaking nature, or status as first, are non-actionable opinion or puffery. *See* Order at 14 (mere opinions as to the innovative or novel techniques of a product are mere puffery); Motion at 16 (citing *Taleshpour v. Apple Inc.*, No. 5:20-CV-03122-EJD, 2021 WL 1197494, at *9 (N.D. Cal. Mar. 30, 2021) ("revolutionary," "groundbreaking," "breakthrough

performance"); *Appliance Recycling Centers of Am., Inc. v. JACO Env't, Inc.*, 378 Fed. Appx. 652 (9th Cir. 2010) ("unique," "unprecedented"); *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1011 (D. Ariz. 2017) ("an innovation," "technological breakthrough," "genius idea"); and *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, *6 (D. Del. 2021) ("the first of its kind")).  Instead, Urban Doll merely lists these statements by Lashify and states in passing, in a single sentence, that they "are not puffery."  Opp. at 10.  This falls far short of Urban Doll's pleading obligations, and its counterclaim based on these allegations fails.

**Second**, Urban Doll entirely fails to state a claim based on Lashify's alleged statements (1) that its "lashes are so light they literally stick to your lashes;" (2) that Lashify's lashes do not damage a wearer's natural lashes; and (3) that Lashify's system is easy to apply and saves time.  Mot. at 16; FAC/CC ¶¶ 69, 115, 116, 124. Urban Doll makes no attempt to establish that it has sufficiently alleged the falsity of these statements, that they are not non-actionable opinion and puffery, or that they have deceived or have a tendency to deceive a substantial segment of the audience.  *See* Dkt. 47-1 ("Mot.") at 16–18 (providing cases and argument on each point unrebutted in Urban Doll's Opposition).  Urban Doll has thus essentially conceded its failure to state a false advertising claim based on these statements. Given its failure to state a claim based on any statements by Lashify or Ms. Lotti, the Court should dismiss the Counterclaim with prejudice.

## III.   URBAN DOLL FAILS TO STATE A CLAIM AGAINST MS. LOTTI

Urban Doll's opposition does nothing to overcome its failure to state a claim for false patent marking or false advertising under the Lanham Act against Ms. Lotti personally.

First, as explained in the motion and above in Section II, the FAC does not allege a competitive injury resulting from *any* alleged marking statements, let alone any such statements purportedly attributed to Ms. Lotti personally. The false

1    marking claim against Ms. Lotti should therefore be dismissed.

2        Second, despite having yet another opportunity to do so, Urban Doll has still

3    failed to point to a single actionable statement alleged in the FAC that is attributable

4    to Ms. Lotti to state a false advertising claim against her.  Urban Doll points in the

5    opposition to the following alleged statements by Ms. Lotti to try to sustain its

6    claim:

7        • "[a]ll the other copycats in litigation were unable to find ANYTHING

8          in the world that was remotely close to the Lashify system…ZERO.

9          ZILCH."

10       • "I have protected every element of the worlds [sic] only DIY lash

11         extension system"; and

12       • "We've search high and low and no lash system patents have ever

13         been found at the @uspto"

14   Opp. at 12–13.  But the FAC fails to plead the falsity of any of these statements

15   under Rule 9(b)'s heightened pleading standard.  Nor does Urban Doll adequately

16   allege or address in its Opposition how these statements are actionable.  They are

17   not.  As explained above, Urban Doll cannot state a claim based on variations of

18   the statement that Lashify invented and patented its technology, which is the gist of

19   Ms. Lotti's comments.  Even more, Ms. Lotti's statements are non-actionable for

20   the additional reason that they are her subjective opinion and non-actionable

21   puffery, including those on her personal social media and notes from her on the

22   Lashify website.  *See Peloton*, 2021 WL 2188219, at *7 (holding that CEO's

23   statements were "broad, generalized claims of superiority that are not actionable

24   under the Lanham Act").  Urban Doll makes no real attempt to overcome these

25   deficiencies in its allegations against Ms. Lotti, dooming its claim.

26   **IV.   CONCLUSION**

27       Urban Doll has had many chances to state a claim against Lashify and Ms.

28   Lotti—even asserting *identical claims in two separate cases before the same Court*.

1    Each time, its claims have proven defective, and any further attempts to fix them

2    would be futile.  The Court should not give Urban Doll another opportunity to assert

3    unfounded claims against Lashify and Ms. Lotti, and should instead grant Lashify's

4    motion and dismiss the FAC with prejudice.

6    Dated: February 1, 2024          Respectfully submitted,

7                                   */s/Ciara McHale*
                                   Ciara McHale

8                                   Attorneys for Plaintiff

9                                   Lashify, Inc.

10                               Ryan Tyz (CSB No. 234895)
                               ryan@tyzlaw.com

11                               Ciara McHale (CSB No. 293308)
                               ciara@tyzlaw.com

12                               TYZ LAW GROUP PC

13                               4 Embarcadero Center, 14th Floor
                               San Francisco, CA 94111

14                               Telephone: 415.868.6900

15                               Saina S. Shamilov (CSB No. 215636)

16                               sshamilov@fenwick.com

17                               FENWICK & WEST LLP
                               Silicon Valley Office

18                               801 California Street

19                               Mountain View, CA 94041
                               Tel: 650.988.8500

20                               Fax: 650.938.5200

21                               Bryan A. Kohm (CSB #233276)

22                               Shannon E. Turner (CSB #310121)
                               Su Li (CSB #339374)

23                               FENWICK & WEST LLP

24                               555 California Street, 12th Floor
                               San Francisco, CA 94104

25                               Tel: 415.875.2300

26                               Fax: 415.281.1350
                               bkohm@fenwick.com

27                               sturner@fenwick.com

28                               sli@fenwick.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jonathan T. McMichael (CSB No. 304737)
jmcmichael@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Tel: 206.389.4510
Fax: 206.389.4511

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF COMPLIANCE**

I, Ciara McHale, hereby certify, that the foregoing brief complies with Local Rule 11-6.1.  According to the word count of the word-processing system used to prepare the Brief, the Brief contains 3,862 words, excluding indices and exhibits. The Brief therefore does not exceed the 7,000-word limit set by Local Rule 11-6.1.

Dated: February 1, 2024                    Respectfully submitted,

                                           _/s/Ciara McHale_
                                           Ciara McHale

                                           Attorneys for Plaintiff
                                           Lashify, Inc.